IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

PDCM ASSOCIATES, SE,

    **Plaintiff,**

            v.                                        CIVIL NO. 15-1615 (JAG)

CARLOS RIVAS QUIÑONES, *et al.*,

    **Defendants.**

OPINION AND ORDER

GARCIA-GREGORY, D.J.

    This matter is before the Court on Defendants'[1] Motion to Dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6), (the "Motion"). Docket No. 11. Plaintiff timely opposed. Docket No. 14. Plaintiff filed the instant action pursuant to 42 U.S.C. § 1983 ("Section 1983") for alleged violations of its rights under the Fifth and Fourteenth Amendments of the United States Constitution. Docket No. 1. Plaintiff also seeks pendent jurisdictions under 28 U.S.C. § 1367 alleging violations of Section 7 and 9 of the Constitution of Puerto Rico. *Id.* For the reasons stated below, Defendants' Motion is GRANTED in Part and DENIED in part.

---

[1] The Court refers to Carlos Rivas Quiñones ("Rivas"), in his personal capacity; Luis F. Cruz Batista ("Cruz") in his personal and official capacity; Ivan Diaz Carrasquillo ("Diaz"), in his personal and official capacity; Office of Management and Budget of the Commonwealth of Puerto Rico ("OMB-PR"); the Office of the Ombudsman of the Disabled of the Commonwealth of Puerto Rico ("Ombudsman"), collectively as "Defendants." Docket No. 1. The Court will also refer to Rivas, Cruz, and Diaz collectively as the "individually named Defendants."

## BACKGROUND

I.      **Factual Background**[2]

PDCM Associates, SE ("PDCM"), is a corporation in Puerto Rico that leases a commercial building to the Ombudsman of the Disabled of the Commonwealth of Puerto Rico ("Ombudsman"), a state agency created to protect the rights of people with disabilities. Docket No. 1. As of the date the complaint was filed, Ivan Díaz Carrasquillo ("Díaz") is the director of the Ombudsman. *Id.* The Office of Management and Budget of the Commonwealth of Puerto Rico ("OMB-PR") is a state agency that advises the Governor of Puerto Rico in management and budget matters. *Id.* From January 2013 to October 2014, Defendant Carlos Rivas Quiñones ("Rivas"), was the director of OMB-PR *Id.* Since October 2014, Defendant Luis F. Cruz Batista ("Cruz"), has been the director of OMB-PR. *Id.*

PDCM leased and currently leases a building to the Ombudsman located in Miramar, Puerto Rico. *Id.* The lease for the 2011 contract expired on February 28, 2013. Several months before the 2011 lease expired, a renewal contract was sent to the Ombudsman. *Id.* The parties went back and forth with requests, but in the end the new contract was not signed on time and the 2011 lease expired. *Id.* By August 2013, almost five months after the contract expired, the OMB-PR had not addressed the renewal of the contract for the Ombudsman building. *Id.* During the contractless period, PDCM was constantly asking the Ombudsman about the renewal of the pending contract and demanding payment for back rent, all while the Ombudsman continued to

---

[2] For purposes of Defendants' Motion to Dismiss, all facts in PDCMs' Amended Complaint, Docket No. 28, are presumed to be true.

request more documents and demand repairs. *Id.* On November 18, 2013, the Ombudsman sent PDCM an email stating it was waiting approval for the contract from OMB-PR. *Id.* Meanwhile, PDCM requested a meeting with Diaz to determine the status of the new contract and to address the occupancy of the building. *Id.* In the meeting, Diaz admitted there was a debt owed to PDCM, but blamed OMB-PR for all the issues regarding the new contract. *Id.* A new contract for the lease of the building in Miramar was signed in November 2014. *Id.* Since the government could not pay rent before the new contract was signed, the Ombudsman accumulated $820,035.00 in back rent during the course of twenty-two months. *Id.* To seek redress, PDCM decided not to seek state law breach of contract remedy, as under Puerto Rico law OMB-PR and/or the Ombudsman do not have an obligation to pay for back rent during a period in which a contract has not been signed. *Id.*

Before the Court is PDCM's complaint, Docket No.1; Defendants' Motion, Docket No. 11; and PDCM's Opposition to the Motion, Docket No. 14.

## STANDARD OF REVIEW

A defendant may move to dismiss an action for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). To survive dismissal under this standard, a complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1967 (2007). According to *Twombly*, the complaint must state enough facts to "nudge [the PDCM's] claims across the line from conceivable to plausible." *Id.* at 1974. Therefore, to preclude dismissal pursuant to Fed. R. Civ. P. 12(b)(6), the complaint must rest on factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* at 1965.

Civil No. 15-1615 (JAG)                                                                 4

At the motion to dismiss stage, courts accept all well-pleaded factual allegations as true, and draw all reasonable inferences in the PDCM's favor. *See Correa-Martinez v. Arrillaga-Belendez*, 903 F.2d 49, 51 (1st Cir. 1988). Thus, the PDCM bears the burden of stating factual allegations regarding each element necessary to sustain recovery under some actionable theory. *Goolev v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir. 1988). Courts need not address complaints supported only by "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996).

## ANALYSIS

### I.    Eleventh Amendment Immunity

The Eleventh Amendment bars suits seeking monetary damages against a State in federal court, unless the State has waived its sovereign immunity, or Congress has expressly overridden it. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989); *see also O'Neill v. Baker*, 210 F.3d 41 (1st Cir. 2000). It is also well settled law that the Eleventh Amendment has been interpreted to bar suits for monetary relief against the instrumentalities, agencies, or "alter egos" of a state and against its officers in their official capacities.[3] *Kentucky v. Graham*, 473 U.S. 159, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Culebras Enterprises Corp. v. Rivera Ríos*, 813 F.2d 506, 516 (1st Cir.1987).

---

[3] The Supreme Court requires a two-step analysis in order to determine whether a government institution is an arm or alter ego of the state and thus entitled to immunity under the Eleventh Amendment. *Fresenius Med. Care Cardiovascular Res., Inc. v. P.R. & the Caribbean Cardiovascular Ctr. Corp.*, 322 F.3d 56, 65 (1st Cir. 2003) (citing and discussing *Hess v. Port Auth. Trans–Hudson Corp.*, 513 U.S. 30 (1994)). First, the court must analyze how the state has structured the government institution and, second, if the "structural indicators point in different directions," the risk of the damages being paid from the public treasury should be assessed. *Id*. at 65–69. Applying such principles, the Court finds that the 1) Office of Management and Budget of the Commonwealth of Puerto Rico and 2) Office of the Ombudsman of the Disabled of the Commonwealth of Puerto Rico are arms or alter egos of the government of Puerto Rico.

The First Circuit has consistently held that the government of Puerto Rico is considered a state for purposes of the Eleventh Amendment. *Metcalf & Eddy, Inc. v. Puerto Rico Aqueduct & Sewer Authority*, 991 F.2d 935, 939 n.3 (1st Cir. 1993); *De León López v. Corporación Insular de Seguros*, 931 F.2d 116, 121 (1st Cir. 1991); *Puerto Rico Ports Auth. v. M/V Manhattan Prince*, 897 F.2d 1, 9 (1st Cir. 1990).

Accordingly, all monetary claims against the state agencies and individually named Defendant in their official capacity are DISMISSED *with prejudice*.[4]

It is unclear how PDCM seeks redress for its state law claims. Docket No. 1. Although under 28 U.S.C. § 1367, the Court has jurisdiction to hear state law claims that arise from a "common nucleus of operative facts," that statute does not override a state's Eleventh Amendment immunity. *Pagan v. Puerto Rico*, 991 F. Supp. 2d 343, 346 (D.P.R. 2014). Nonetheless, any claims that depend on monetary recovery from the government are barred.

## II.   Declaratory Judgment

Although, the Eleventh Amendment bars suits for monetary damages against a state and its officers, it does not preclude claims for prospective equitable relief. *See Ex Parte Young*, 209 U.S. 123, 155–56 (1908); *Nieves–Márquez v. Commonwealth of Puerto Rico*, 353 F.3d 108, 123 (1st Cir. 2003). "The Ex Parte Young doctrine permits suits to proceed against state officers in their official capacities to compel them to comply with federal law." *Vaqueria Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 477–478 (1st Cir. 2009) (citing *Ex Parte Young*, 209 U.S. at 123). The First

---

[4] Thus, Eleventh Amendment dismisses all monetary claims against: 1) OMB-PR; 2) Ombudsman; 3) Cruz in his official capacity; and Diaz in his official capacity.

Circuit explained that such suits "may only seek prospective injunctive or declaratory relief; they may not seek retroactive monetary damages or equitable restitution." *Id.* (citing *Edelman v. Jordan*, 415 U.S. 651, 664–65 (1974)).

In this case, PDCM seeks a permanent injunction to ensure that the government does not violate PDCM's rights by delaying a future contract and then not paying rent. Docket No. 1. Because Defendants do not argue against the declaratory relief claim, and the Court takes all allegations in the complaint as true, the claim survives the motion to dismiss stage against Defendants.

Now that Plaintiff's claims against Defendants in their official capacity are dealt with, the Court turns to the individually named Defendant's in their personal capacities.

### III.    Section 1983 Action

In order to establish liability under § 1983, plaintiffs "must show by a preponderance of the evidence that: (1) the challenged conduct was attributable to a person acting under color of state law; and (2) the conduct deprived the plaintiffs of rights secured by the Constitution or laws of the United States." *Velez-Rivera v. Agosto-Alicea*, 437 F.3d 145, 151-52 (1st Cir. 2006) (quoting *Johnson v. Mahoney*, 424 F.3d 83, 89 (1st Cir. 2005)). "Section 1983 only applies to persons acting under color of state law." *Rehberg v. Paulk*, 132 S. Ct. 1497, 1505 (2012). To determine whether a state actor was engaged in personal pursuits or acting under the color of state law, the Court must assess the state actor's conduct in light of the totality of the circumstances. *Martínez v. Colón*, 54 F.3d 980, 987 (1st Cir. 1995). "The key determinant is whether

the actor, at the time in question, purports to act in an official capacity or to exercise official responsibilities pursuant to state law." *Id.* at 986 (citing *West v. Atkins*, 487 U.S. 42, 49 (1988)).

### 1.   Takings Clause

The Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. V; *see also Gerena v. Puerto Rico Legal Services*, 697 F.2d 447, 449 (1st Cir. 1983). The Takings Clause is applied to the states through the Fourteenth Amendment. *Garcia–Rubiera v. Fortuño*, 752 F. Supp. 2d 180, 188 (D.P.R. 2010) (citing *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 175 n.1 (1985)). The U.S. Supreme Court has recognized that most cases arising under the Takings Clause fall into one of two categories: where the government authorizes a physical occupation of property or actually takes title ("physical taking"), or where government regulation of the property's use unfairly singles out the property owner to bear a burden that should be borne by the public as a whole ("regulatory taking"). *Yee v. City of Escondido*, 503 U.S. 519, 522-23 (1992); *see also Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 426 (1982) (physical taking). A physical taking occurs, for example, when the government takes title to private property, floods a landowner's property, or installs a cable on that land. *See Yee*, 503 U.S. at 527. In such cases, the government must provide compensation to the landowner who suffers the compelled physical invasion of her property. *Id.*

PDCM argues that there was a Taking within the meaning of the Fifth Amendment because the government occupied the building in question without a contract, and without paying rent. Docket No. 1. Taking the allegations of the complaint as true, PDCM provides

sufficient facts to establish a valid Fifth Amendment Takings claim. *Id*. PDCM alleges that the government occupied the building for twenty-two months after the contract had expired. Docket No. 1. This by itself is sufficient to show that the government encroached upon PDCM's right to enjoy the use of its property regardless if it was for personal use or financial gain. *See Philip Morris, Inc. v. Reilly*, 312 F.3d 24, 35 (1st Cir. 2002); *see also Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 322 (2002) (stating that state compensation is mandated when a leasehold is taken and the government occupies the property for its own purposes, even though that use is temporary).

Defendants argue that the government did not purposefully invade PDCM's property because it only stayed there after the lease expired. Docket No. 11. Furthermore, they argue that PDCM had access to the building to make reparations, making the occupation a temporary nuisance more than a physical taking. Docket No. 11. Defendants also argue that PDCM never asked Defendants to abandon the property, for failure to have a newly signed contract. *Id*. Defendants arguments are inapposite in this case. The law is clear that when the government physically takes possession of your property, that is considered a taking. *Tahoe-Sierra*, 535 U.S. at 322. It does not matter how the government reached this point. The fact that the PDCM did not evict the government from the property does not mean that they were foregoing the rent payments that they could have received from another tenant while Defendants were occupying the building. Docket No. 14.

PDCM also alleges that all individually named Defendants acted under color of state law since they knew or should have known that Puerto Rico's law does not allow for payment of any goods or service absent a written contract and by not paying proper compensation it was taking

plaintiff's property without just compensation, which is prohibited by the Fifth Amendment of the United States Constitution. Docket No. 1.

Taking the above allegations as true, the Court finds that PDCM has pled enough facts to support a Section 1983 Takings violation claim against the individually named Defendants in their personal capacities.

### 2.   Due Process Violation

To state a due process claim, a plaintiff must show that he "(1) had a property interest of constitutional magnitude, and (2) was deprived of that property interest without due process of law." *Clukey v. Town of Camden*, 717 F.3d 52, 54-55 (1st Cir. 2013); *see also Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189 (2001). "To establish a constitutionally protected property interest, a plaintiff 'must have more than an abstract need or desire for [a thing] . . . [and] more than a unilateral expectation of it.'" *Redondo-Borges v. U.S. Dep't of Hous. & Urban Dev.*, 421 F.3d 1, 8 (1st Cir. 2005) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972)) (alterations in original). A plaintiff instead must "have a legitimate claim of entitlement to it." *Id.* Although due process protections emanate from federal law, property interests are created and governed by "existing rules or understandings that stem from an independent source such as state law." *Kauffman v. Puerto Rico Tel. Co.*, 841 F.2d 1169, 1173 (1st Cir. 1988) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985).

In this case, PDCM fails to state a due process violation because it has no constitutionally protected property interest. PDCM alleges it has a property interest in its expired contract with Defendants because they "purposely and without reason delayed for many

months the approval of [a new] contract in order not to pay the rent." Docket No. 1 at 5-8. However, Puerto Rico law makes clear that once PDCM's properly written and documented contract with the government had expired, it had no further legitimate claim against the government. *See Jaap Corp. v. Depto. Estado*, 187 D.P.R. 730, 739 (P.R. 2013); *Vicar Builders v. ELA*, 192 D.P.R. 256, 269-70 (P.R. 2015).

In *Jaap*, the Puerto Rico Supreme Court reiterated the well-established principle that for a contract with the Puerto Rico government to be valid and enforceable, it must satisfy strict requirements. *Id.* at 741-742. In particular, the court stated that a contract between the Puerto Rico government and a private party must be: 1) in writing, 2) maintain an accurate record with the purpose of establishing their existence pima facie; 3) a copy must be sent Office of the Comptroller of Puerto Rico as a double proof of the execution thereof, 4) and evidence the accuracy of time that it was executed fifteen (15) days before. *Id.*

In this case, PDCM's valid leasing contract with the government expired on February 28, 2013. Docket No. 1. PDCM admits that a new written contract that satisfied the requirements of *Jaap* was not signed until November 2014, to start in December 2014. *Id.*[5] As a result, there was no valid or enforceable contract between the months of March 2013 and December 2014. *Id.* Thus, under Puerto Rico law, PDCM was not entitled to rent payments during this period. *See Jaap*, 187 D.P.R. at 749 ("The state cannot outlay public funds in violation of the . . . strict requirements that apply to government contracts."). Accordingly, PDCM had no "legitimate

---

[5] Furthermore, Puerto Rico law makes clear that a valid governmental obligation must be "signed by competent authority to encumber the appropriations . . . ." 3 L.P.R.A. § 283b(k). It is undisputed that a new contract was not signed by any relevant authority until November 2014. Docket No. 1.

claim of entitlement" to rent payments, *see Redondo-Borges*, 421 F.3d at 8, and thus had no constitutionally protected property interest.[6]

Moreover, even if PDCM did have a legitimate claim of entitlement under its expired contract, the First Circuit has repeatedly held "that a simple breach of contract does not amount to an unconstitutional deprivation of property." *See Redondo-Borges*, 421 F.3d at 10. PDCM cites cases from other Circuits to argue that sometimes state law contracts can give rise to a property interest. Docket No. 14 at 6-7. However, none of these cases are analogous to the factual situation of this case. Here, we are not dealing with the type of contract cases that have been recognized as conferring a property interest under the Fourteenth Amendment. *See e.g., Goldberg v. Kelly*, 397 U.S. 254, 264 (1970) (public assistance); *Mathews v. Eldrige*, 424 U.S. 319, 332 (1976) (Social Security benefits); *Bell v Burson*, 402 U.S. 535, 539 (1971) (driver's licenses); *Goss v. Lopez*, 419 U.S. 565, 573-74 (1975) (public school education); *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 11 (1978) (municipal furnished utility services); *Cleveland Bd. of Educ. V. Loudermill*, 470 U.S. 532. 538-39 (1985) (public employment). Therefore, The Court sees no reason to depart from the First Circuit's well-settled position on this matter. *See Redondo-Borges*, 421 F.3d at 10-11.

Lastly, PDCM argues that since it has no breach of contract action under Puerto Rico law, a constitutionally protected property interest should be recognized in his contract, because he lacks any other remedy. Docket No. 14 at 6-7. However, Plaintiff offers no support for this

---

[6] An argument that there was an implied contract because the government was a holdover tenant also fails. *See Vicar Builders v. ELA*, 192 D.P.R. 256, 269-70 (P.R. 2015) (translated by the Court). In *Vicar Builders*, the Puerto Rico Supreme Court held that a tacit or implied renewal contract arising out of an expired lease agreement is not a valid or enforceable contract against the government as it violates public policy. *Id*. at 267-68. Thus, a property interest is not implicitly created by operation of Puerto Rico contract law.

argument. Moreover, Plaintiff's argument runs contrary to universally accepted due process doctrine, which requires that, first, a plaintiff show that it has a protected property interest, and second, that the state deprived it of that property interest without due process of law. *See Lujan*, 532 U.S. at 195; *Clukey*, 717 F.3d at 54-55. Plaintiff's argument essentially asks us to mesh together the two prongs of the analysis and find that the first element is met simply because PDCM lacks a remedy in state court for its alleged injury. This Court refuses to drastically rewrite well-established due process doctrine in this way.[7]

Accordingly, all Section 1983 due process violation claims against the Defendants are DISMISSED *with prejudice*.

IV.    **State Law Claims**

PDCM alleges that the government took its property without the due process of law in violation of Article II, Sections 7, and 9 of the Constitution of the Commonwealth of Puerto Rico. Docket No. 1. Although PDCM does not clearly state the claims they seek redress under state law, Defendants do not attack them, and thus, they remain.

## CONCLUSION

In view of the foregoing, Defendants' Motion to Dismiss is GRANTED in part and DENIED in part. Specifically,

---

[7] Furthermore, the Court disagrees that PDCM had no other remedy. For starters, PDCM could have evicted the government once its contract had expired. *See* 31 L.P.R.A. § 4066; *Vicar Builders*, 192 D.P.R. at 269.

1.  all Section 1983 monetary claims as to 1) Luis F. Cruz Batista in his official capacity, 2) Ivan Diaz Carrasquillo in his official capacity, and 3) OMB-PR, 4) Ombudsman, are DISMISSED *with prejudice*;[8]

2.  Plaintiff section 1983 claims based on the Takings Clause violation seeking money damages as to 1) Luis F. Cruz Batista in his personal capacity, 2) Ivan Diaz Carrasquillo in his personal capacity; 3) Carlos Rivas Quiñones in his personal capacity remain;

3.  Plaintiffs Section 1983 due process claims as to Defendants are DISMISSED *with prejudice*;

4.  Plaintiff claims seeking a declaratory judgment against Defendants remain;

5.  Plaintiff state Constitution claims against Defendants remain. To the extent that Plaintiff pleads monetary state Constitution claims against OMB-PR, Ombudsman, or any of the individual named Defendants in their official capacity, they are DISMISSED *with prejudice*.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 1st day of April, 2016.

<u>s/ Jay A. Garcia-Gregory</u>
JAY A. GARCIA-GREGORY
United States District Judge

---

[8] Rivas is not mentioned here as he was not sued in his official capacity. Docket No. 1.